UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

JODI L. BARROS,                                    Civ. No. 10-1339 (PJS/LIB)

              Plaintiff,

v.                                                 **REPORT AND**
                                                   **RECOMMENDATION**

MICHAEL J. ASTRUE,
Commissioner of Social Security,

              Defendant.

---

Plaintiff Jodi Barros seeks judicial review of the decision of the Commissioner of Social

Security ("Commissioner") denying her application for disability insurance benefits ("DIB").

The matter was referred to the undersigned United States Magistrate Judge for Report and

Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  This Court has jurisdiction

over the claims pursuant to 42 U.S.C. §§ 405(g) and 1283(c).  Both parties submitted motions for

summary judgment.  For the reasons set forth below, the Court recommends that Plaintiff's

motion for summary judgment be DENIED and the Defendant's motion for summary judgment

be GRANTED.

I.    **BACKGROUND**

     A.    **Procedural History**

     On April 12, 2006, Plaintiff filed an application for DIB and a Title XVI application for

Supplemental Security Income ("SSI").  (Tr. 10)[1].  Plaintiff alleged that she became disabled on

March 6, 2007.  (Tr. 10).  The Commissioner denied Plaintiff's claims on March 6, 2007.  (Tr.

---

[1] Throughout this Report and Recommendation, this Court refers to the administrative record [Docket No. 7] for the
present case by the abbreviation "Tr."

10).  Plaintiff filed a Request for Reconsideration, which the Commissioner also denied on September 20, 2007.  (Tr. 10).  Subsequently, Plaintiff filed a written request for a hearing on November 20, 2007.  (Tr. 10).  Pursuant to Plaintiff's request for a hearing, Administrative Law Judge ("ALJ") Larry Meuwissen conducted a hearing on August 7, 2009.  (Tr. 10).  At the hearing, Wayne Onken, an impartial Vocational Expert ("VE"), testified.  (Tr. 10).  After the hearing, on November 2, 2009, the ALJ issued a decision denying Plaintiff's request for benefits.  (Tr. 18).  The ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. 10-18).  Plaintiff sought review of the decision by the Appeals Council.  (Tr. 5).  However, the Appeals Council denied Plaintiff's request for review.  (Tr. 1-3).  As such, the ALJ's decision became the final decision of the Commissioner.  See 20 C.F.R. §§ 404.981, 416.1481.

**B.    Factual History**

Plaintiff was born on January 6, 1955.  (Tr. 24).  Plaintiff is married with two adult children.  (Tr. 25).  Plaintiff graduated from high school and finished one semester of college.  (Tr. 27).  She spends time living in Arizona and Minnesota.  (Tr. 26).  Plaintiff previously worked as a secretary at a hospital, as an assembler at a medical company, as a nursing assistant at a hospital, as a cashier, and as a bank teller.  (Tr. 123, 152).  However, Plaintiff stopped working due to complaints of daily pain from a fall in 2000.  (Tr. 27).

Due to her medical conditions, Plaintiff testified that she can only stand in one place for a couple of minutes before she has to move.  (Tr. 35).  Plaintiff complains that she cannot sit or walk at times.  (Tr. 122).  Plaintiff complains that she has difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, completing tasks, concentrating, and using her hands due to her medical conditions.  (Tr. 145).

Plaintiff shops for groceries, watches TV, plays cribbage, and visits with her elderly father. (Tr. 32, 144). Plaintiff swims on a daily basis. (Tr. 33). Additionally, Plaintiff takes care of her dog and drives. (Tr. 131, 133). Plaintiff does laundry, cooks, loads the dishwasher, dusts, cleans the bathroom, but her husband has to vacuum and change the bed. (Tr. 131, 142). Plaintiff can pay bills, count change, and use a checkbook. (Tr. 133).

### C.    Medical Evidence in the Record

The Court's discussion of Plaintiff's medical records begins with her visit to Dr. J. Carvel Jackson on September 12, 2005. At that time, Plaintiff presented with neck and bilateral upper extremity pain and paresthesias. (Tr. 299). Dr. Jackson found electric diagnostic evidence of distal symmetric sensory greater than motor bilateral upper extremity peripheral polyneuropathy characterized by mild axonal loss and mild demyelination. (Tr. 300). In addition, Dr. Jackson found equivocal slowing of the right ulnar motor nerve conduction velocity across the elbow consistent with very mild tardive ulnar palsy. (Tr. 300). However, Dr. Jackson did not find evidence of left cervical radiculopathy or entrapment neuropathy at the carpal tunnel. (Tr. 300). Dr. Jackson concluded that Plaintiff suffered from obesity, chronic pain disorder, chronic lower back pain, and diabetes, a diagnosis which he continued to renew. (Tr. 363, 366, 382, 834, 835, 923). On February 23, 2006, Dr. Jackson concluded that Plaintiff had reached maximum medical improvement and was permanent and stationary. (Tr. 834). As such, he opined that Plaintiff was disabled from gainful employment. (Tr. 834, 835).

On April 15, 2005, the Plaintiff underwent a MRI. The MRI found a disc desiccation at the L4-L5 and L5-S1 levels, with marked disc space loss and surrounding endplate irregularity and marrow changes at the L4-5 level as well as moderate disc space loss with slight endplate irregularity at the L5-S1 level. (Tr. 256). Additionally, the MRI found an annular tear with disc-

osteophyte complex causing mild narrowing of the thecal sac, where there was a slight ventral deformity, and a mild bilateral L4-5 neural foraminal narrowing.  (Tr. 256).  At the L5-S1 level, the MRI showed small central disc extrusion superimposed on a disc osteophyte complex causing only mild narrowing of the thecal sac where there also was a minimal ventral deformity. (Tr. 256).

Plaintiff saw Dr. Bhardwaja for low back and hip pain on April 4, 2006.  During the examination of Plaintiff's back, the doctor noted that she could flex thirty degrees, extend ten degrees and lateral flex ten degrees.  (Tr. 220).  However, the doctor found that Plaintiff suffered pain with flexion and extension and had tenderness on palpation over the right lumbar facet joints at L4-5 and L5-S1.  (Tr. 220).  Dr. Bhardwaja concluded Plaintiff suffered from lumbar degenerative disc disease, L4-5 and L5-S1 facet atropathy, morbid obesity, bilateral neural foraminal narrowing at L4-5 and L5-S1, L4-5 annular tear and LF-S1 disc extrusion.  (Tr. 123). He recommended medical management and epidural steroid injections for treatment.  (Tr. 221). Dr. Bhardwaja continued to make similar findings and diagnoses.  (Tr. 223, 225, 227, 230-31, 858, 861).  To treat Plaintiff's lower back pain, Dr. Bhardwaja performed 4 facet blocks on L2-3, L3-4, and L5-S1on June 23, 2007.  (Tr. 858).

A few months later, on July 6, 2005, another MRI found slight posterior vertebral body with degenerative changes found only at a few cervical levels.  (Tr. 258).  Overall, the examining doctor found an essentially unremarkable cervical spine.  (Tr. 258).

Plaintiff presented for treatment with a neurologist on July 19, 2005.  The doctor found that Plaintiff did "not have a convincing history, examination or imaging for a neuropathic etiology of her pain."  (Tr. 290).  Furthermore, the doctor concluded that Plaintiff suffered from chronic myofascial pain syndrome.  (Tr. 290).

Plaintiff presented to Dr. Thomas on April 11, 2007 for a neurological consultation regarding her low back pain and lower extremity pain. (Tr. 850). Dr. Thomas noted that on examination that Plaintiff had fair range of motion with 90 degrees flexion and 10 degrees extension. (Tr. 851). He found her gait normal and mild discomfort when changing position such as from sitting to standing. (Tr. 851). However, upon review of her 2005 MRI, Dr. Thomas determined that Plaintiff had degenerative disk disease at L4-5 and mild to moderate neuroforaminal narrowing at L4-5 and mild neuroforaminal narrowing at L5-S1. (Tr. 851). Dr. Thomas' final diagnosis concluded that Plaintiff suffered from bilateral lumbar radiculopathy, which was greater on her left side, and lumbar spine stensosis. (Tr. 851). Because Plaintiff had not had an MRI in two years, Dr. Thomas ordered Plaintiff to undergo a new MRI.

Plaintiff underwent a third MRI which was analyzed on May 17, 2007. (Tr. 848-49). The doctor reviewing the MRI of the lumbar spine noted that it only revealed minimal and mild degenerative changes including mild disc osteophyte complexes and hypertrophy of the zygapophyseal joints contributing to minimal and mild neuroforaminal narrowing at multiple levels of the lumbar spine. (Tr. 849). The MRI did not show central canal stenosis or spondylolisthesis or scoliosis. (Tr. 849). Neurosurgical intervention was not recommended. (Tr. 849).

Dr. Thomas saw Plaintiff again on June 27, 2007. (Tr. 865, 866). He stated that Plaintiff's MRI showed disc degeneration at L4-5 and significant disk degeneration at L3-4 with mild lateral recess and foraminal narrowing in the mid-position of the lumbar spine greater on the left side. (Tr. 866). Again, Dr. Thomas recommended conservative treatment options rather than surgery. (Tr. 866).

Residual Functional Capacity ("RFC") assessments were included in Plaintiff's medical records.  The first, on December 11, 2006, Dr. Fina, a non-examining, consulting state agency physician, concluded that Plaintiff could lift up to twenty pounds occasionally and up to ten pounds frequently.  (Tr. 757).  Additionally, he found that Plaintiff could stand and/or walk about six hours a day and sit about six hours days.  (Tr. 757).  Dr. Fina noted that little objective medical evidence supported the Plaintiff's claims regarding her alleged necessary limitations on standing and sitting.  (Tr. 757).  Moreover, Dr. Fina stated that Plaintiff could climb stairs, balance, stoop, kneel, crouch and crawl frequently, but could only kneel occasionally and could never climb ladders, ropes, or scaffolds.  (Tr. 758).  No limitations were placed on pushing, pulling, reaching, handling, or fingering.  (Tr. 757, 759).  However, Dr. Fina concluded that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, and hazards.  (Tr. 760).  In the second RFC, Dr. Charles Grant affirmed Dr. Fina's RFC on September 19, 2007 taking into account Plaintiff's updated medical records. (Tr. 892).

Plaintiff's final RFC was completed by the Center for Musculoskeletal Medicine. Murray Palmer, OTR, CHT, CWCE, an occupational therapist, concluded that Plaintiff could perform work in the light physical demand exertional level including occasionally lifting up to 20 pounds and frequently lifting up to ten pounds.  (Tr. 899-90).  Additionally, Plaintiff could stand/walk frequently, sit constantly, bend/stoop occasionally, squat/kneel occasionally, reach forward constantly, and reach overhead frequently.  (Tr. 899).  The musculoskeletal exam revealed normal or near normal upper and lower extremity range of motion and spinal mobility as well as a normal gait.  (Tr. 902).

### D.       Evidence from the Vocational Expert

A vocational expert ("VE"), Wayne Onken, testified at the administrative hearing.  (Tr. 36).  The VE testified that some of Plaintiff's past work was unskilled light, while other work was skilled light and semi-skilled light.  (Tr. 36).  In addition, the VE stated that the Plaintiff's past work required skills that could be transferred to sedentary work requiring equal or lower vocational preparation.  (Tr. 36).  Specifically, the VE opined that numerical jobs and recording jobs such as margin clerk, letter of credit clerk, brokerage clerk, transfer clerk, statement clerk, proof machine operator, and mortgage accounting clerk would be available.  (Tr. 37).  Moreover, the VE testified that such jobs exists in significant numbers in the State of Minnesota.  (Tr. 37).

The ALJ then asked the VE to consider what jobs a person could perform who was over 50 years old, with a high school education, no difficulties with communication, who could perform light work, but could not have contact with any ropes, ladders, or scaffolds.  (Tr. 38). The ALJ further limited the question to allow for only occasional climbing, bending, stooping, and crouching while avoiding concentrated exposure to fumes, odors, and hazardous machineries.  (Tr. 38).  In response to this hypothetical question, the VE testified that Plaintiff could perform her past work as a small products assembler, teller, and cashier.  (Tr. 38). Additionally, the ALJ asked the VE to consider whether someone with mild reduction in concentration, persistence in pace, but who could still sustain basic work activities that were not fast paced would be able to perform Plaintiff's past work.  (Tr. 38).  The VE responded that the additional limitations would impact the assembly job, but not the other two. (Tr. 38).  However, the VE conceded on cross-examination by the Plaintiff's that her prior work would not be available to someone who could only perform sedentary work.  (Tr. 39).

### E.      The ALJ's Decision

The ALJ determined Plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. 10).   In reaching his decision, the ALJ purported to apply the required five-step sequential analysis: (1) whether the claimant had engaged in substantial gainful activity; (2) whether the claimant had a severe impairment; (3) whether the claimant's impairment met or equaled a listed impairment; (4) whether the claimant had sufficient RFC to return to her past work; and (5) whether the claimant could do other work existing in significant numbers in the regional or national economy.  20 C.F.R. § 404.1520(a)-(f).

At step one of the analysis, the ALJ found that Plaintiff had not engaged in substantial work from July 26, 2005 through her last insured date of March 31, 2009.  (Tr. 12).  Turning to step two of the analysis, the ALJ determined that Plaintiff suffered severe impairments including degenerative disc disease, obesity, and diabetes mellutis.  (Tr. 12).

Next, at step three, the ALJ concluded that Plaintiff's impairment or combination of impairments did not meet or equal one of the listed impairments in 20 C.F.R., part 404, subpart P, appendix 1.  (Tr. 14).  At step four, the ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b).  (Tr. 14).  However, the ALJ limited the statutory definition as applied to Plaintiff and found that due to her medical impairments she could not climb ropes, ladders, or scaffolds; could not be exposed to concentrated fumes, odors, or hazardous machinery; and could only occasional stoop.  (Tr. 14).

In analyzing Plaintiff's RFC, the ALJ considered all Plaintiff's alleged symptoms and whether they were consistent with the objective medical evidence and other evidence consistent with 20 C.F.R. 404.1529 and 416.929.  (Tr. 14).  In addition, the ALJ considered opinion evidence in accordance with 20 C.F.R. 404.1527.  (Tr. 14).  The ALJ used a two step process

when analyzing the RFC.  First, the ALJ asked whether there was an underlying medically determinable physical or mental impairment.  (Tr. 15).  Second, if an underlying physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms was shown, the ALJ evaluated the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limited the claimant's ability to work.  (Tr. 15).  If objective medical evidence did not substantiate the claimant's statements about intensity, persistence or symptoms, the ALJ made a finding on the credibility of Plaintiff's statements about the limiting effects of her impairments by considering the record as a whole. (Tr. 15).

Starting with the first prong of the step four analysis, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms. However, at the second prong, the ALJ determined the claimant's statements concerning the intensity, persistence and limiting effects of the symptoms were not consistent with the objective medical evidence.  (Tr. 15-16).

In making his determination, the ALJ considered the opinion of Plaintiff's treating physicians, Dr. Jackson and Dr. Bhardwaja, who found that Plaintiff was unable to engage in even light work because of her medical impairments.  (Tr. 17).  However, the ALJ declined to place significant weight on Dr. Jackson and Dr. Bhardwaja's opinions because they were inconsistent with the objective medical record.  (Tr. 17). Instead, the ALJ gave some weight to the opinions of non-examining state agency physicians because they were supported by medical evidence.   (Tr. 18).   In addition, the ALJ gave significant weight to an RFC evaluation done in 2005 to determine Plaintiff's current ability to work completed by an occupational therapist

because it was based upon an extensive evaluation of claimant's physical condition and functional capacity.  (Tr. 18).

In addition, the ALJ opined that Plaintiff's activities of daily living were inconsistent with her complaints of disabling pain.  (Tr. 17).   As the ALJ noted, the Plaintiff traveled between Arizona and Minnesota, helped take care of her elderly parents in Arizona, and worked once a week cleaning a real estate office.  (Tr. 17).  Furthermore, Plaintiff reported swimming seven days a week for ninety minutes a day.  (Tr. 17).

Finally, while still at the fourth step of the analysis, the ALJ concluded that Plaintiff could perform her past relevant work as a cashier and a teller.  (Tr. 18).   The ALJ relied on the testimony of the VE in formulating his conclusion. (Tr. 18).  Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act.

## II.     STANDARD OF REVIEW

Congress imposed standards for determining whether a claimant is entitled to Social Security disability benefits. There are several benefits programs under the Act, including the DIB Program of Title II (42 U.S.C. §§ 401 et seq.) and the SSI Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 et seq.). Qualified wage earners who become disabled prior to the expiration of their insured status receive benefits under Title II; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, only those who have a disability are eligible for DIB and SSI.  See Randolph v.  Barnhart, 386 F.3d 835, 836 (8th Cir. 2004).

"Disability" means "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).
To be eligible for benefits, an individual's impairments must be of "such severity that he is not
only unable to do his previous work but cannot, considering his age, education, and work
experience, engage in any other kind of substantial gainful work which exists in the national
economy." 42 U.S.C. § 423(d)(2)(A).

Judicial review of the Commissioner's decision to deny disability benefits is constrained
to a determination of whether the decision is supported by substantial evidence in the record as a
whole. Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005). Substantial evidence means more
than a scintilla, but less than a preponderance. Slusser v. Astrue, 557 F.3d 923, 925 (8th Cir.
2009). The substantial evidence test requires "more than a mere search of the record for
evidence supporting the [Commissioner's] findings." Id. Rather, the court "must take into
account whatever in the record fairly detracts from its weight." Id. (quoting Universal Camera
Corp. v. Nat'l Labor Relations Bd., 340 U.S. 474. 488 (1951)).

When reviewing the record for substantial evidence, the Court may not reverse the
Commissioner's decision simply because substantial evidence exists to support the opposite
conclusion. Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984). Moreover, the Court may
not substitute its own judgment or findings of fact for those of the ALJ. Woolf v. Shalala, 3 F.3d
1210, 1213 (8th Cir. 1993). The court must consider "the weight of the evidence in the record
and apply a balancing test to evidence which is contradictory." Dew v. Comm'r of Social Sec.,
2010 WL 3033779 at *16 (D. Minn. 2010) (quoting Gavin v. Heckler, 811 F.2d 1195, 1199 (8th
Cir. 1987)). After balancing the evidence, if it is possible to reach two inconsistent positions
from the evidence and one of those positions represents the Commissioner's decision, the court
must affirm the decision. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992). Thus, the

Court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" <u>Bradley v. Astrue</u>, 528 F.3d 1113, 1115 (8th Cir. 2008).  The decision of the ALJ "is not outside the 'zone of choice' simply because we might have reached a different conclusion had we been the initial finder of fact." <u>Id</u>.

## III.    DISCUSSION

In this case, the parties present four arguments in support of their cross motions for summary judgment.  Defendants assert that the Plaintiff's Complaint should be dismissed because it is untimely.  (Def.'s Mem. in Supp. of Summ. Judgment [Docket No. 23], p. 9). Plaintiff challenges the ALJ's decision on three grounds.  First, Plaintiff alleges that the ALJ improperly discounted the opinion of Plaintiff's treating physician who found Plaintiff was totally disabled.  (Pl.'s Mem. in Supp. of Summ. Judgment [Docket No. 14], pp. 12-14).  Second, Plaintiff contends that the ALJ failed to follow the SSA's own regulations which require the ALJ to re-contact a claimant's treating source if the treating source's opinion contains inconsistencies or ambiguities.  (Pl.'s Mem., pp. 14-15).  Lastly, Plaintiff asserts that because the ALJ wrongly determined her RFC, the testimony of the VE in response to the ALJ's hypothetical question relied upon by the ALJ to find that Plaintiff can perform her past work did not constitute substantial evidence.  (Pl.'s Mem., pp. 15-16).

### A.      Whether the Plaintiff's Claim Should Be Dismissed as Untimely

The Defendant did not specify whether he seeks to dismiss Plaintiff's claims pursuant to a motion to dismiss under Fed. R. Civ. P. 12(b) or by summary judgment.  Since the Court considered materials outside the pleadings in making its decision, it will treat Defendant's motion as one for summary judgment under Fed. R. Civ. P. 56.

Summary judgment is proper if there are no genuine disputes of material fact and the nonmoving party fails to establish an essential element of his or her claim for which he or she bears the burden of proof. Fed.R.Civ.P. 56(c)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The moving party bears the burden to show that the material facts are not in dispute, and a court must view the facts favorably toward the nonmoving party.  Mems v. City of St. Paul, 224 F.3d 735, 738 (8th Cir. 2000). The nonmoving party may not respond with mere allegations or denials but must present specific facts creating an authentic issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

Under 42 U.S.C. § 405(g), a party has sixty days to seek review of a final decision made by the Commissioner of Social Security.[2]  The sixty-day period is "a condition on the waiver of sovereign immunity and ... must be strictly construed." Bowen v. City of New York, 476 U.S. 467, 479 (1986).  In the instant case, the parties do not dispute that the Appeals Council issued its notice of action on January 29, 2010.  Plaintiff filed the present action on April 12, 2010 which was after the applicable 60 day period of limitations.  As such, if 405(g) was the sole determinant of whether Plaintiff's claim was timely, then Plaintiff's action would be untimely.

However, the regulations implementing the Social Security Act effectively extend the terms of the limitations period as follows:

> Any [such] civil action ... must be instituted within 60 days after the Appeals Council's notice of denial of request for review of the administrative law judge's decision or notice of the decision by the Appeals Council is received by the individual, institution, or agency, except that this time may be extended by the Appeals Council upon a showing of good cause. For purposes of this section, the date of receipt of notice of denial of request for review of the administrative law judge's decision or notice of the decision by the

---

[2] 42 U.S.C. § 405(g) reads in its entirety,

Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

> Appeals Council <u>shall be presumed to be 5 days after the date of such notice, unless there is a reasonable showing to the contrary.</u>

20 C.F.R. § 422.210(c) (emphasis added).  Using the five day presumption, the Plaintiff should have received the Appeals Council's notice on February 3, 2010 meaning that any civil action challenging the Commissioner's decision should have been filed by April 5, 2010.  Here, however, Plaintiff did not file her civil action until April 12, 2010.  Thus, in order for the Plaintiffs claim to be timely filed, the Plaintiff must make a "reasonable showing" that she did not receive the Appeals Council's notice within five days.

The Plaintiff fails to make such a showing.  In the complaint and memorandum in support of summary judgment, Plaintiff contends that she received the notice on February 12, 2010.  (Compl. [Docket 1], ¶ 3; Pl.'s Mem., p. 16).   However, Plaintiff does not make a "reasonable showing" that she did not receive the Complaint until February 12, 2010.  Instead, Plaintiff simply relies on the statements made in the Complaint and her memorandum in support of her argument and offers no additional evidence that the Appeals Council's notice was not received within the five day presumption set forth in the Social Security regulations.  However, an attorney's unsupported statements in a brief are not evidence.  <u>Kulhawik v. Holder</u>, 571 F.3d 296, 298 (2nd Cir. 2009) (citing <u>INS v. Phinpathya</u>, 464 U.S. 183, 188-189 n. 6 (1984)).

In cases where a "reasonable showing" rebutting the presumption set forth in 20 C.F.R. § 422.210 has been demonstrated, Courts have required significantly more evidence than the evidence Plaintiff provides in support of her assertion that this present case was timely filed.  For instance, in <u>Hester v. Astrue</u>, 2010 WL 2331096 (S.D. Fla. June 10, 2010), the Court found that providing a postmark demonstrating that the notice from the Appeals Council was not mailed within the five day period constituted a "reasonable showing" necessary to rebut the five day presumption.  <u>See</u> <u>also</u>, <u>Matsibekker v. Heckler</u>, 738 F.2d 79, 81 (2nd Cir. 1984) (rebutting

presumption when the Plaintiff showed that the notice of decision was not even mailed until seven days after the Appeals Council's decision); McKentry v. Sec'y of Health & Human Servs., 655 F.2d 721, 724 (6th Cir. 1981)(determining that presumption of delivery of mail was overcome when there was not evidence that the notice was mailed to the claimant or her attorney and the claimant introduced evidence of non-receipt of the notice); Pettway ex rel. Pettway v. Barnhart, 233 F.Supp.2d 1354, 1357 (S.D. Ala. 2002) (counsel submitted corroborating evidence of a date-stamped copy of the notice); Ritchie v. Apfel, 1999 WL 1995198 at *2 (D. Me. 1999) (the affidavit of the defendant's representative confirmed that the defendant did not mail the notice to the most recent address provided by the plaintiff).

Courts have routinely held that mere, plain assertions of non-receipt are insufficient to rebut the presumption of receipt within five days.  Garcia v. Comm'r of Social Security, 53 Fed. Appx. 192, 194 (3rd Cir. 2002)(finding affidavit by the Plaintiff that notice was not mailed in five days insufficient to rebut the five day presumption); Velez v. Apfel, 2000 WL 1506193 at *1 (2nd Cir. 2000)(determining that a mere "conclusory allegation" of non-receipt does not constitute a reasonable showing); Kinash v. Callahan, 129 F.3d 736, 738 (5th Cir. 1997)(finding that plaintiff's "sworn word that he did not receive th[e] notice is not sufficient, by itself, to rebut the statutory presumption"); Rivera v. Sec'y of Health and Human Servs., 39 F.3d 1188, 1994 WL 594739 at *1 (9th Cir. 1994) (finding newspaper articles indicating inclement weather conditions in Plaintiff's area insufficient to rebut the five day presumption because Plaintiff did not make any showing that weather conditions actually caused delays in mail service); Velazquez v. Massanari, 2002 WL 246760 at *1 (D. Neb. 2002)(the "bare assertion" of delayed receipt "is not the type of 'reasonable showing' contemplated by the applicable regulation").

Therefore, the Court finds Plaintiff's bare assertions do not constitute a "reasonable showing" sufficient to rebut the five day presumption of receipt. Since Plaintiff's complaint was not timely filed, the Court recommends that summary judgment be granted to the Defendant and Plaintiff's complaint be dismissed.[3]

**B.      Whether the ALJ Improperly Discounted the Medical Opinion of Dr. Jackson, Plaintiff's Treating Physician**

Even though the Court finds that Defendant's motion for summary judgment should be granted on the basis of Plaintiff's untimely complaint, for the sake of completeness, the Court will address each of the Plaintiff's arguments in support of summary judgment beginning with the Plaintiff's assertions that the ALJ improperly discounted the medical opinion of Plaintiff's treating physician.

In his RFC analysis, the ALJ considered the opinion of Plaintiff's treating physician, Dr. Jackson, but declined to grant it controlling weight. (Tr. 17). The ALJ stated that he did not place significant weight on Dr. Jackson's opinion because it was inconsistent with the objective medical evidence in the record as a whole. (Tr. 17). Instead, the ALJ granted some weight to the opinions of the State's consulting medical examiners. (Tr. 18). Additionally, the ALJ granted significant weight to an RFC evaluation done in 2005 to determine Plaintiff's current

---

[3] The Court notes that the sixty-day requirement is not jurisdictional and is subject to equitable tolling. See Bowen v. City of New York, 476 U.S. 467, 481 (1986).

> Generally, equitable circumstances that might toll a limitations period involve conduct (by someone other than the claimant) that is misleading or fraudulent.... Equitable tolling thus far has been allowed only in those cases where the government has hindered a claimant's attempts to exercise her rights by acting in a misleading or clandestine way.... And this court has recognized the principle that ignorance of legal rights does not toll a statute of limitations.

Turner v. Bowen, 862 F.2d 708, 710 (8th Cir. 1988) (quotations and citations omitted). In the instant case, Plaintiff does not argue that the equitable tolling should apply nor has she presented any evidence demonstrating that the government hindered her ability to timely file her complaint or showing that a third party engaged in misleading or fraudulent conduct. Therefore, the Court declines to toll the sixty day statute of limitations.

ability to work completed by Murray Palmer, an occupational therapist, because it was based upon an extensive evaluation of claimant's physical condition and functional capacity.  (Tr. 18). Moreover, the ALJ noted that the objective medical evidence in the record revealed that some of Plaintiff's myriad treatments alleviated her pain.  (Tr. 17).

Plaintiff argues that the ALJ wrongly failed to identify an examining medical source expressing an opinion inconsistent with the opinion of Dr. Jackson, but rather relied upon his own lay opinion of the medical evidence in the record to determine Plaintiff's RFC.  (Pl.'s Mem., p. 13.)  Plaintiff challenges the ALJ's refusal to rely on Dr. Jackson's RFC findings and notes that if the ALJ had properly relied on the report of Dr. Jackson, the ALJ would have found that Plaintiff could not perform work at a light exertional level in formulating his RFC.  Id.

"[A] treating physician's opinion is given 'controlling weight' if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence.'" Dolph v. Barnhart, 308 F.3d 876, 878 (8th Cir. 2002). However, a treating physician's opinion "do[es] not automatically control, since the record must be evaluated as a whole." Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995).  An ALJ may discount a treating physician's medical opinion, and adopt the contrary medical opinion of a consulting physician, when the treating source's statements are conclusory, unsupported by medically acceptable clinical or diagnostic data, or when the ALJ's determination is justified by substantial evidence in the Record as a whole. See, Rogers v. Chater, 118 F.3d 600, 602 (8th Cir. 1997); Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir. 1991).  The opinion of a treating physician may also be discounted if other assessments are supported by better, or by more thorough, medical evidence. See, Wagner v. Astrue, 499 F.3d 842, 849 (8th Cir. 2007); Ward v. Heckler,

786 F.2d at 846.  In other words, the ALJ is not required to believe the opinion of a treating

physician when, on balance, the medical evidence convinces him otherwise.  Id.

Dr. Jackson, Plaintiff's treating physician concluded that Plaintiff suffered from obesity,

chronic pain disorder, chronic lower back pain, and diabetes.  (Tr. 363, 366, 382, 834, 835, 923).

On February 23, 2006, Dr. Jackson concluded that Plaintiff had reached maximum medical

improvement and was permanent and stationary.  (Tr. 834).   As such, he opined that Plaintiff

was disabled from gainful employment.  (Tr. 834, 835).  In 2008, Dr. Jackson stated that

Plaintiff's conditions prevented her from performing light exertional work.  (Tr. 997).

Moreover, he noted that Plaintiff's medical conditions prohibited her from standing for more than

two hours out of an eight-hour day on a sustained basis and could not lift more than ten

pounds.  (Tr. 997). [4]

However, as the ALJ properly noted, substantial objective medical evidence in the record

did not support Dr. Jackson's conclusion.  (Tr. 18).  MRI imaging found only mild or moderate

problems.  For instance, an MRI done on April 15, 2005 found a disc desiccation at the L4-L5

and L5-S1 levels, with marked disc space loss and surrounding endplate irregularity and marrow

changes at the L4-5 level as well as moderate disc space loss with slight endplate irregularity at

the L5-S1 level.  (Tr. 256).  In addition, the MRI showed an annular tear with disc-osteophyte

complex causing mild narrowing of the thecal sac, where there is a slight ventral deformity, and

a mild bilateral L4-5 neural foraminal narrowing.  (Tr. 256).  At the L5-S1 level, the MRI

demonstrated small central disc extrusion superimposed on a disc osteophyte complex causes

---

[4] While Dr. Jackson did state that Plaintiff's medical conditions prohibited her from standing for more than two hours out of an eight-hour day on a sustained basis and could not lift more than ten pounds, he also made numerous conclusory statements that Plaintiff was "disabled" and "unable to work."  However, "a treating physician's opinion that a claimant is 'disabled' or "unable to work,' does not carry 'any special significance,' because it invades the province of the Commissioner to make the ultimate determination of disability."  Davidson v. Astrue, 578 F.3d 838, 842 (8th Cir. 2009)(citing 20 C.F.R. §§ 416.927(e)(1), (3)).

only mild narrowing of the thecal sac where there also was a minimal ventral deformity. (Tr. 256).  A few months later, on July 6, 2005, another MRI found slight posterior vertebral body with degenerative changes found at only a few cervical levels.  (Tr. 258).  Overall, the examining doctor found an essentially unremarkable cervical spine.  (Tr. 258).  The doctor reviewing the final MRI of the lumbar spine in the record, completed on May 17, 2007, stated that it only revealed minimal and mild degenerative changes including mild disc osteophyte complexes and hypertrophy of the zygapophyseal joints contributing to minimal and mild neuroforaminal narrowing at multiple levels of the lumbar spine.  (Tr. 849).  The MRI did not show central canal stenosis or spondylolisthesis or scoliosis.  (Tr. 849).

Furthermore, doctors continued to recommend conservative treatment and did not suggest Plaintiff was a candidate for neurosurgical intervention even though conservative treatments left her with considerable low back pain.  (Tr. 227, 231,340, 849, 866, 915).  Dr. Bhardwaja noted that epidural steroid injections had provided the Plaintiff with excellent improvement in 2005.  (Tr. 222, 224).   However, at later visits, the Plaintiff stated that she only received some improvement, (Tr. 226), or no improvement at all.  (Tr. 278).  Additionally, Rehab Arizona Physical Therapy noted that Plaintiff reported steady improvement in her condition from physical therapy and recommended that she continue with it two to three time per week. (Tr. 389, 398, 401, 408, 410, 412).

Likewise, the physical examination administered by an occupational therapist support the ALJ's finding.   After a physical examination, the occupational therapist concluded that Plaintiff could perform work in the light physical demand exertional level including occasional lifting up to 20 pounds and frequently lifting up to ten pounds.  (Tr. 899-90).  Additionally, Plaintiff could stand/walk frequently, sit constantly, bend/stoop occasionally, squat/kneel occasionally, reach

forward constantly, and reach overhead frequently. (Tr. 899). The musculoskeletal exam revealed normal or near normal upper and lower extremity range of motion and spinal mobility as well as a normal gait. (Tr. 902). However, after the examination, Plaintiff complained that it exacerbated her symptoms. (Tr. 848).

Moreover, Dr. Fina, a non-examining, consulting state agency physician noted that "[a]ltho the clmt lists severe limitations in sit/stand/walk activities the[re] is little obj MER to support restrictions" greater than what he provided. (Tr. 757). Similarly, he found "there are mild EMG studies changes but these are accommodated for in the above evaluation." (Tr. 757). Likewise, a neurologist found that the Plaintiff had fair range of motion with 90 degrees flexion and 10 degrees extension, was able to walk on her heels and toes, squats with fair recovery from that action, and had a normal gate. (Tr. 851). Further, the doctor observed that the Plaintiff demonstrated only mild discomfort when changing positions such as from sitting and standing. (Tr. 851). As to Plaintiff's neurological condition, the doctor noted mild decreased sensitivity in the left medial calf region compared to the right, but found no cerebellar deficits and ranked her motor strength at 5/5 without any focal deficits. (Tr. 851). The same neurologist stated one month later that "there do not appear to be any neurological deficits at this time and everything appears to be normal as to her gait, mobility and ROM [range of motion]." (Tr. 848). This opinion was seconded by Dr. Bhardwaja in 2005. (Tr. 230). Other doctor visits resulted in normal neurological findings. (Tr. 290, 848).

While the Court finds that some medical evidence in the record supports Plaintiff's complaints of pain, the Court cannot reverse the Commissioner even if it, sitting as the finder-of-fact, would have reached a contrary result. See, Harris v. Shalala, 45 F.3d 1190, 1193 (8th Cir. 1995); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993). Therefore, the Court concludes that

the ALJ acted within the scope of his discretion by rejecting the opinion of Dr. Jackson and that the ALJ's decision was based on substantial evidence in the record as a whole.

Instead of relying on the opinion of Dr. Jackson, the ALJ placed significant weight on the RFC analysis by an occupational therapist and granted weight to the opinions of non-examinig state agency physicians, Dr. Fina and Dr. Grant.  This decision was properly within the ALJ's discretion because the ALJ may discount the opinion of a treating physician if other assessments are supported by better, or by more thorough, medical evidence. See, Casey v. Astrue, 503 F.3d 687, 694 (8th Cir .2007) (affirming ALJ's decision to grant more weight to nonexamining reviewer's opinion because the opinion was consistent with record as a whole); Woolf, 3 F.3d at 1213 (stating that the court is "not allowed to substitute [its] opinion for that of the ALJ, who enjoys a closer position to the testimony in support of an application") (citing Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992) (stating that a court may not reverse merely because substantial evidence would have supported an opposite decision)).  The Court notes that the opinions of non-examining, consulting physicians standing alone do not constitute "substantial evidence." See Jenkins v. Apfel, 196 F.3d 922, 925 (8th Cir. 1999) (finding that, where no other evidence supported an ALJ's residual functional capacity determination, the opinion of a non-examining consulting physician was not "considered substantial evidence in the face of the conflicting assessment of a treating physician").  However, the situation in Jenkins is absent here.  In this case, the ALJ did not rely solely on one non-examining, consulting physician's opinion to reach his decision.  Rather, the ALJ relied on the non-examining, consulting physician's opinion as one part of the record along with the objective medical evidence and the opinions of the occupational therapist and another non-examining consulting physician, which as a whole, provides substantial support for his findings.

In the present case, the ALJ granted significant weight to the opinion of the occupational therapist because it was "arrived at after an extensive evaluation of claimant's physical condition and functional capacity." (Tr. 18).[5]   The ALJ additionally granted some weight to the opinions of non-examining, consulting physicians Dr. Fina and Dr. Grant.  (Tr. 18).   When medical evidence conflicts, as is the case here, the obligation of the ALJ is to consider "all of the medical evidence, . . . weigh this evidence in accordance with the applicable standards, and attempt to resolve the various conflicts and inconsistencies in the record." Hudson ex. rel. Jones v. Barnhart, 345 F.3d 661, 667 (8th Cir.  2003).  The Court is persuaded that the ALJ properly weighed the medical opinions in the record and granted those opinions the weight they deserved considering the record as a whole.  See Bentley v. Shalala, 52 F.3d 784, 785 (8th Cir.1995) ("It is the ALJ's function to resolve conflicts among the various treating and examining physicians.") Even where evidence in the record might exist that could support a finding that Plaintiff's subjective complaints coincide with the objective evidence, the Court must uphold the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice." Bradley, 956 F.2d at 838.  In the present case, the Court finds that the ALJ's decision was supported by substantial evidence in the record, and therefore, it falls squarely within the zone of choice presented to him.

---

[5] Occupational therapists are not "acceptable medical source[s]" under the Social Security Regulations.  20 C.F.R. § 404.1513 (a).   Rather, they constitute "other sources."  20 C.F.R. § 404.1513(d)(1).   However, "an opinion from a medical source who is not an acceptable medical source may outweigh the opinion of an acceptable medical source, including the medical opinion of a treating source."  Van Vickle v. Astrue, 539 F.3d 825, 829 n. 3 (8th Cir. 2008) (citing Soc. Sec. R. 06-03p, 2006 WL 2329939).   Other sources may provide evidence "to show the severity of [a claimant's] impairment(s) and how it affects [a claimant's] ability to work." 20 C.F.R. § 404.1513(d).   In the instant case, the ALJ properly relied on evidence from an occupational therapist, an other source under 20 C.F.R. 404.1513(d), in order to show the severity of the claimant's impairment and its effect on her RFC.  The ALJ found that the medical records from the occupational therapist were better supported by the objective medical evidence on the record than the opinion of Dr. Jackson.  Thus, the ALJ's decision was proper because he correctly relied upon the record as a whole in his decision to give greater weight to the occupational therapist's opinion than the treating physician.

**C.      Whether the ALJ Improperly Failed to Re-Contact Plaintiff's Treating Physician to Clarify an Ambiguous Opinion**

Next, Plaintiff argues that the ALJ neglected to follow the SSA's own regulations which direct the ALJ to re-contact a claimant's treating source if the treating source's opinion contains alleged inconsistencies or ambiguities.  (Pl.'s Mem., pp. 14-15).  Thus, according to Plaintiff, the ALJ had a duty to "attempt to contact Dr. Jackson to resolve any alleged inconsistencies, rather than discounting the doctor's opinion for the reasons contained in the ALJ's decision."  (Pl.'s Mem., p. 15).

In a social security hearing, the ALJ has a duty to fully develop the record.  See Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004).   Although this duty may include re-contacting a treating physician for clarification of an opinion, the duty only arises if a crucial issue is undeveloped.  Id.  Here, the ALJ did not find any ambiguity in Dr. Jackson's medical opinion or express that his opinion required clarification.  Instead, the ALJ simply concluded that Dr. Jackson's opinion was not supported by objective medical evidence in the record as a whole. (Tr. 17-18).   As such, the ALJ did not have to re-contact Dr. Jackson.  See, 20 C.F.R. §§ 404.1512(e)-(e)(1); Hacker v. Barnhart, 459 F.3d 934, 938 ("The regulations provide that the ALJ should re-contact a treating physician when the information the physician provides is inadequate for the ALJ to determine whether the applicant is actually disabled," but "[t]he regulations do not require an ALJ to recontact a treating physician whose opinion was inherently contradictory or unreliable"); Goff v. Barnhart, 421 F.3d 785, 791 (8th Cir. 2005) ("While the ALJ has an independent duty to develop the record in a social security disability hearing, the ALJ is not required to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." )

23

Moreover, Plaintiff does not allege that any relevant medical records remain missing from the record.   The Plaintiff does not contend that there exist any additional medical records that should be obtained from Dr. Jackson which would make it more likely that the Plaintiff would be found disabled.  In fact, the ALJ himself noted that he did not recontact Dr. Jackson because "there is substantial medical evidence from Dr. Jackson as well as other treating professionals that address claimant's impairments."  (Tr. 10).  Thus, Plaintiff has not established that the ALJ's alleged "failure to fully develop the record resulted in prejudice, and has therefore provided no basis for remanding for additional evidence."  Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005) (citing Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995) (determining that reversal on the account of a failure to develop the record is only warranted where such failure is prejudicial)).

**D.   Whether the ALJ's Hypothetical Question to the Vocational Expert Was Correct**

Lastly, Plaintiff argues that the hypothetical question posed by the ALJ to the VE does not constitute substantial evidence because it was based on an improper RFC formulated by the ALJ.  (Pl.'s Mem., pp. 15-16).  As such, according to Plaintiff, the VE's conclusion regarding whether Plaintiff can perform her past work cannot be used to support the ALJ's decision.  (Id.) After analyzing Plaintiff's RFC, the ALJ asked the VE whether, based on this RFC, the Plaintiff could perform her past work.  (Tr. 38).  The VE concluded that since a small products assembler, teller, and cashier constituted unskilled light work, Plaintiff could perform her work.  (Tr. 38). The VE further indicated that if the Plaintiff had some mild reduction in concentration and persistence in pace, she could not perform the small assembler job.  (Tr. 38).  Subsequently, in his written opinion, the ALJ relied on the VE's conclusion for his determination that the Plaintiff could perform her past work as a cashier and a teller and was not disabled.  (Tr. 18).

"A hypothetical question must precisely describe a claimant's impairments so that the vocational expert may accurately assess whether jobs exist for the claimant." Howard v. Massanari, 255 F.3d 577, 581-82 (8th Cir.2 001).  In order to constitute substantial evidence, testimony from a VE must be based on a properly phrased hypothetical question.  Id.; Roberts v. Apfel, 222 F.3d 466, 471 (8th Cir. 2000). A hypothetical question is sufficient if it sets forth the impairments which are accepted as true by the ALJ. Roberts, 222 F.3d at 471.

The ALJ's RFC finding was supported by substantial evidence.  As discussed above the ALJ properly discounted the RFC of Dr. Jackson in favor of the non-examining state agency physicians' and the occupational therapist's RFC.  Furthermore, the ALJ made a credibility finding that the Plaintiff's subjective complaints of pain did not comport with her activities of daily living or the objective medical evidence.  As such, the Court finds that the ALJ's hypothetical question to the VE was proper and the VE's conclusions constituted substantial evidence upon which the ALJ could base his decision.  See Davis v. Apfel, 239 F.3d 962, 966. (8th Cir. 2001) ("A hypothetical is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ"); Rappoport v. Sullivan, 942 F.2d 1320, 1323-24 (8th Cir. 1991) (finding testimony from a vocational expert, based on a properly phrased hypothetical question, constitutes substantial evidence supporting the ALJ's decision).  Based on the above reasoning in sections V. B, C, and D, the untimeliness of the filing of Plaintiff's complaint, the Court also recommends that the Defendant's motion for summary judgment could be granted on substantive grounds.

## IV.   CONCLUSION

**IT IS HEREBY RECOMMENDED THAT:**

1.  Defendant's Motion for Summary Judgment (Doc. No. 22) be GRANTED and

2.   Plaintiff's Motion for Summary Judgment (Doc. No. 13) be DENIED.


Dated: May 18, 2011                              s/Leo I. Brisbois

                                                 Leo I. Brisbois
                                                 U.S. MAGISTRATE JUDGE

### N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by June 1, 2011**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.